UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Sevren Da'Sean Godbolt, #341489, ) | C/A No. 4:15-cv-2564-JMC-TER |
| ) | |
| Plaintiff, ) | |
| ) | Report and Recommendation |
| vs. ) | |
| ) | |
| Captain Joseph Powell, ) | |
| Lt. Ford, ) | |
| Sgt. Donovan Ford, ) | |
| Lt. Albert Housey, ) | |
| Ofc. Kurt McKinstry, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

Plaintiff, who is proceeding *pro se*, brings this action pursuant to 42 U.S.C. § 1983, alleging the Defendants violated his constitutional right to be free from cruel and unusual punishment by using excessive force. A liberal construction of Plaintiff's Complaint also contains allegations in regard to medical care arising after the alleged use of excessive force. Presently before the court is Defendants' Motion for Summary Judgment (ECF No. 28). Because Plaintiff is proceeding *pro se*, he was advised pursuant to *Roseboro v. Garrison*, 528 F.3d 309 (4th Cir. 1975), that a failure to respond to Defendants' Motion could result in dismissal of his Complaint. Plaintiff did file an untimely motion for leave to file an amended complaint, which was denied on August 19, 2016. (ECF No. 43). However, Plaintiff did not file any response to the Motion for Summary Judgment. All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2). This report and recommendation is entered for review by the district judge.

## RULE 41(B) DISMISSAL

A complaint may be dismissed pursuant to Rule 41(b) of the Federal Rules of Civil Procedure

y

for failure to prosecute and/or failure to comply with orders of the court. *Ballard v. Carlson*, 882 F.2d 93 (4th Cir. 1989), cert. denied, 493 U.S. 1084 (1990), and *Chandler Leasing Corp. v. Lopez*, 669 F.2d 919 (4th Cir. 1982). In considering whether to dismiss an action pursuant to Rule 41(b), the court is required to consider four factors:

(1)  the degree of plaintiff's responsibility in failing to respond;

(2)  the amount of prejudice to the defendant;

(3)  the history of the plaintiff in proceeding in a dilatory manner; and,

(4)  the existence of less drastic sanctions other than dismissal.

*Davis v. Williams*, 588 F.2d 69 (4th Cir. 1978).

In the present case, the Plaintiff is proceeding *pro se* so he is entirely responsible for his actions. It is solely through Plaintiff's neglect, and not that of an attorney, that no responses have been filed. Plaintiff has not responded to Defendants' motion for summary judgment or the court's orders requiring him to respond. No other reasonable sanctions are available. Accordingly, it is recommended that this action be dismissed pursuant to Fed. R. Civ. Proc. 41(b).

However, in the alternative, it is recommended that Defendants' Motion be granted and the Complaint be dismissed based on the merits as discussed below.

## MOTION FOR SUMMARY JUDGMENT

### A. Facts and Allegations

Plaintiff alleges that on July 1, 2014, he and another inmate assaulted Officer Cifelli. (ECF No. 1, Plaintiff's Complaint). After the assault, Plaintiff alleges that he was escorted out of his unit by Officer Doe, Lt. Ford, Cpl. McKinstry, and Sgt. Ford. *Id.* Then, Lt. Housey came out of the front door of the unit. *Id.* Plaintiff alleges "they all slammed me on my face and watched Lt. Albert

Housey knee me in my face and head. I was th[e]n picked up and with my hand[s] being pushed up high behind my back grabbed and thrown repeatedly into the air to fall however I landed. I was then slammed by" Lt. Ford, Sgt. Ford, McKinstry, and Officer Doe. *Id.* Plaintiff alleges he was stripped of his socks and shoes and forced to walk to operations. *Id.* Plaintiff alleges then Capt. Powell sprayed him in the face while restrained "well after the situation was restored." *Id.*

Plaintiff alleges he was then placed on the SMU field in abnormally hot extreme weather conditions barefoot on concrete with no medical attention for a few hours. *Id.* Plaintiff states that his scar on his shoulder and bruises on his feet were documented. *Id.* The above is the extent of Plaintiff's allegations as contained in the filed complaint.

Defendants filed a motion for summary judgment that included a memorandum, and several exhibits and affidavits supporting the motion. (ECF No. 28). Plaintiff did not file a response.

**1. Related to Excessive Force Allegations**

Lt. Deangelo Ford, a named Defendant, submitted an affidavit and attests that at the time of the incident he was employed by the South Carolina Department of Corrections. (ECF No. 28-3, Aff. Lt. Ford). Ford approached Plaintiff after Plaintiff's assault upon Officer Cifelli and ordered Plaintiff to submit to handcuffing. *Id.* Plaintiff was handcuffed by Lt. Ford without incident and without force. *Id.* Lt. Ford released Plaintiff to Officer Housey for transportation to Operations. *Id.* Lt. Ford did not remove Plaintiff's shoes but could not recall if Plaintiff had shoes on; Lt Ford did not use any chemical munitions. *Id.* Lt. Ford witnessed no officer physical contact with Plaintiff other than to guide Plaintiff out of the unit to walk to Operations. *Id.* Lt. Ford had no other contact with Plaintiff. *Id.*

Kurt McKinstry, a named Defendant, submitted an affidavit and attests that at the time of the

incident he was employed by the South Carolina Department of Corrections. (ECF No. 28-4, Aff. Sgt. McKinstry). McKinstry arrived after Plaintiff was handcuffed. *Id.* McKinstry states Plaintiff "had absolutely no sign of any injury." *Id.* McKinstry assisted in escorting Plaintiff to Operations. *Id.*

Lt. Albert Housey, Jr., a named Defendant, submitted an affidavit and attests that at the time of the incident he was employed by the South Carolina Department of Corrections. (ECF No. 28-5, Aff. Lt. Housey). Housey did not assist in the escort in the yard; he assisted the escort in the unit where the assault on Cifelli occurred. *Id.* Housey did not hit, strike, throw, or use any force other than to escort him in the unit. *Id.* Housey did not take Plaintiff's shoes off. *Id.* Housey witnessed Plaintiff resisting and falling to the ground instead of standing or walking. *Id.* After observing this occurrence several times, Housey told the other officers to let Plaintiff sit and cool off. *Id.* Housey told Plaintiff that he was going to lockdown and needed to cooperate. *Id.* Once Plaintiff stood up and left the unit with other officers, Housey had no other contact with Plaintiff. *Id.* Chemical munitions were not used in Housey's presence. *Id.*

Sgt. Donovan Ford, a named Defendant, submitted an affidavit and attests that at the time of the incident he was employed by the South Carolina Department of Corrections. (ECF No. 28-7, Aff. Sgt. Ford). Sgt. Ford and Sgt. McKinstry were involved in the escort of Plaintiff across the yard. (ECF No. 28-7, Aff. Sgt. Ford); (ECF No. 28-4, Aff. Sgt. McKinstry). Ford was assigned to keep the yard under control as additional gang outbreaks were possible. (ECF No. 28-7, Aff. Sgt. Ford). Captain Joseph Powell, a named Defendant, submitted an affidavit and attests that at the time of the incident he was employed by the South Carolina Department of Corrections. (ECF No. 28-2, Aff. Cap. Powell). Powell's interactions with Plaintiff began with Plaintiff's escort across the yard.

*Id.* Plaintiff was yelling, pulling away, refusing to walk, slumping to the ground, and generally being non-compliant with the escort. (ECF No. 28-2, Aff. Cap. Powell); (ECF No. 28-4, Aff. Sgt. McKinstry); (ECF No. 28-7, Aff. Sgt. Ford). Powell gave orders to Plaintiff to cooperate with the escort. (ECF No. 28-2, Aff. Cap. Powell); (ECF No. 28-4, Aff. Sgt. McKinstry). Once the officers and Plaintiff began to cross the yard, Plaintiff would go limp and stop walking multiple times. (ECF No. 28-4, Aff. Sgt. McKinstry). Plaintiff was lifting his feet of the ground and having to be held up by the officers. *Id.*

Plaintiff was "completely non-compliant" at the halfway point of the walk. *Id.* Plaintiff was again warned to comply or chemical munitions would be utilized. (ECF No. 28-2, Aff. Cap. Powell); (ECF No. 28-4, Aff. Sgt. McKinstry). Plaintiff failed to comply and refused to stand or walk. (ECF No. 28-2, Aff. Cap. Powell). Powell then used chemical munitions and Plaintiff walked to Operations without further resistance. (ECF No. 28-2, Aff. Cap. Powell); (ECF No. 28-4, Aff. Sgt. McKinstry).

The spray is a pre-measured burst and only one burst was used to compel compliance. (ECF No. 28-2, Aff. Cap. Powell). Powell states Plaintiff was a "verified member[] of a security threat group, had a history of violence, and had just attacked a corrections officer with a weapon with life threatening force inflicting significant resulting injury." *Id.* In weighing use of the chemical, Powell thought it was the most effective tool available with the least risk of any significant injury to Plaintiff. *Id.* Lt. Ford is Captain Powell's supervisor. (ECF No. 28-3, Aff. Lt. Ford). Lt. Ford reviewed reports of Powell's use of chemical spray due to Plaintiff's resistance to walking and found that the spray was an effective, low-risk tool in compelling compliance. *Id.* McKinstry's involvement ended after Plaintiff's compliance. (ECF No. 28-4, Aff. Sgt. McKinstry).

Sgt. Ford attests Lt. Mole took over the escort and Ford returned to yard duty. (ECF No. 28-7, Aff. Sgt. Ford). Ford stated there were no notable signs of injury to Plaintiff. *Id.*; (ECF No. 28-2, Aff. Cap. Powell). Powell, McKinstry, Sgt. Ford, Lt. Ford, and Housey each attest individually that: they did not act with any ill will or evil intent, their actions were in the scope of their duties, they did not hit, strike, or throw Plaintiff, they did not take Plaintiff's shoes off, they did not observe any other person inflict injury or use more than minimal force on Plaintiff, and that the only placement of hands on Plaintiff was to lift and support Plaintiff's weight as he refused to walk. (ECF No. 28-3, Aff. Lt. Ford); (ECF No. 28-2, Aff. Cap. Powell); (ECF No. 28-4, Aff. Sgt. McKinstry); (ECF No. 28-7, Aff. Sgt. Ford); (ECF No. 28-5, Aff. Lt. Housey).

Lt. Edward Mole attests that he investigated the July 1 incident and several reports are attached to his affidavit. (ECF No. 28-6, Aff. Lt. Mole). Mole interviewed Plaintiff after the incident. *Id.* After the interview, while medical was called and classification/cell assignment at SMU was being arranged, Plaintiff was taken to the SMU yard, a screened and shaded area. (ECF No. 28-6, Aff. Lt. Mole); (ECF No. 28-2, Aff. Cap. Powell). As soon as Plaintiff's cell was assigned and medical was ready, he was taken into the building. (ECF No. 28-6, Aff. Lt. Mole). Powell attests that Plaintiff was allowed to wash off after being sprayed with chemical munitions. (ECF No. 28-2, Aff. Cap. Powell). There was no delay by officers in processing Plaintiff and no long term placement outdoors. (ECF No. 28-6, Aff. Lt. Mole). In regard to heat allegations, McKinstry states the officers were in full uniform and any delay was due to Plaintiff's non-compliance. (ECF No. 28-4, Aff. Sgt. McKinstry).

Agent William Garvin, submitted an affidavit in support of the Defendants' Motion. (ECF No. 32, Aff. Garvin). Garvin works for the Office of Inspector General Police Services. *Id.* Garvin

6

was involved in bringing charges against Plaintiff in regard to Plaintiff's assault on Officer Cifelli and also later when Plaintiff made allegations of excessive force against officers. *Id.*

On July 1, 2014, Garvin interviewed Plaintiff in the Operations holding cell. *Id.* Plaintiff had no visible injuries at that time and made no allegations of excessive force at that time. *Id.* Garvin's later review of excessive force allegations revealed no violation of policy by officers and no evidence of use of excessive force against Plaintiff. *Id.* Plaintiff did not file any grievances in regard to medical complaints. *Id.* Plaintiff alleged large amounts of chemical munitions were sprayed on him, that he was thrown, and that Housey drove his knee into his face. *Id.* Garvin's review of all the records showed that the bruising under Plaintiff's toes was explainable by the video showing Plaintiff had refused to walk and was dragging his feet and falling to the ground. *Id.*

**2. Related to Medical Care**

Defendants submitted Nurse Karen Tuten's affidavit with Plaintiff's medical records attached. (ECF No. 28-8, Aff. Tuten). Tuten was a registered nurse employed by the South Carolina Department of Corrections. *Id.* Tuten examined Plaintiff on July 1, 2014. *Id.* Tuten's encounter began around 4:44pm and ended around 5:18pm. *Id.* There was no significant physical injury requiring further treatment and the two areas of minor abrasions were superficial skin irritations with no bleeding or open wound. *Id.* Plaintiff's main concern was a full shower. *Id.*

Plaintiff had an abrasion 3cm in diameter on his right shoulder and a few superficial scrapes on his right cheekbone. *Id.* One eye was slightly pink but Plaintiff denied any vision problems on the day of the incident. *Id.* Plaintiff's eyes were irrigated several times over fifteen minutes and Plaintiff washed off all uncovered portions of his body. *Id.* His abrasions were cleaned and antibiotic ointment applied. *Id.* There was no bleeding or open wounds. *Id.* There was no swelling

7

or discoloration. *Id.*

During that time, Plaintiff did not complain to Tuten about any use of physical force other than chemical munitions. *Id.* He did not report to her having been kicked, thrown, slammed, or having any foot injury from walking on hot concrete. *Id.* Tuten attests if Plaintiff had complained of these items to her, the complaints would have been documented and additional medical protocol may have been used to rule out head or bone injury. *Id.* Tuten did not schedule a follow up visit for Plaintiff because his condition would fully resolve without additional treatment. *Id.* After treatment, Plaintiff was immediately transported to Allendale. *Id.*

Defendants submitted Dr. Thomas Byrne's affidavit in support of their Motion. (ECF No. 28-11, Aff. Byrne). Byrne attests that "any injuries received as documented by the examination notes and records immediately following on the date of the incident and thereafter upon his presentation to the medical clinic, were very minor in nature, were superficial, and resolved without the need for further medical intervention." *Id.* Byrne reviewed medical records in relation to Plaintiff's excessive force allegations and was involved on certain dates in Plaintiff's care. *Id.* Byrne stated "I can say to a reasonable degree of medical certainty that treatment provided was appropriate, that his injuries following the July 1, 2014 incident were minor and were expected to fully resolve, that they were dealt with appropriately, and that access to medical treatment was provided. Additionally, [Plaintiff's] injuries resolved with treatment and time. Further, the Detention Facility and staff allowed full access of this inmate to medical treatment and complied with directives and recommendations of medical staff." *Id.*

On July 2, Plaintiff reported left shoulder pain, right side pain, and sores on his feet. *Id.* Physical examination by medical staff showed slight swelling over left scapula, but no bruising,

slight swelling to face, non-blanching redness to bottom of feet with bruising under smallest toes, slight swelling and blanching redness to wrists. *Id.* The findings were minor and expected to resolve without medical intervention. *Id.*

On July 10, Plaintiff complained of his eye sight. *Id.* Plaintiff had a four year history of eye complaints and upon examination appeared to be seeing well. *Id.* On July 15, Plaintiff complained of his hands hurting from the July 1 altercation. An examination revealed his hands were normal. *Id.* On July 28, Plaintiff complained of his hands and eyes. *Id.* An examination revealed he had no swelling and good range of movement. *Id.* It was noted that he had two sets of glasses per prescription and had refused a third eye appointment. *Id.*

On September 30, 2014, Plaintiff stated his shoulder was still hurting and he needed pain medication. *Id.* Examination revealed nothing and no medications were prescribed. *Id.* On October 14, 2014, Plaintiff complained of eye pain. *Id.* Examination revealed no appreciable deficit. *Id.* On October 28, 2014, Plaintiff complained of needing an eye doctor. *Id.* On January 7, 2015, Plaintiff complained of headaches and eye irritation. *Id.* Examination showed no sight deficits. *Id.* On February 20, 2015, Plaintiff had fought with another inmate and was sprayed with chemical munitions. He stated he was fine. *Id.* On March 17, 2015, Plaintiff complained of shoulder pain and sought pain medication. *Id.* Examination showed no deficit. *Id.* On May 18, 2015, Plaintiff said he lost his glasses; an eye appointment was scheduled. *Id.*

### 3. Related to Grievance Procedure and Appeals

The Defendants submitted Warden Levern Cohen's affidavit in support of their Motion. (ECF No. 28-10, Aff. Cohen). Once a step 1 grievance form is filed, it is forwarded to Cohen and he conducts an investigation. *Id.* If a Step 1 grievance is denied, the inmate must file a Step 2

grievance. *Id.* If the Step 2 grievance is denied, the inmate must appeal to the Administrative Law Court in order to exhaust his state administrative remedies. *Id.*

Plaintiff followed all three steps in relation to his excessive force allegations. *Id.* Plaintiff filed no grievance in relation to medical treatment. *Id.* The Step 1 grievance was forwarded to the Office of Inspector General Police Services for independent investigation and that Department concluded the allegations were unsupported by the videotape, medical records, and witness and officer reports. *Id.* Plaintiff had very few superficial scratches. *Id.* The initial assault on Officer Cifelli occurred around 2:10 p.m., and Plaintiff caused delays in resisting and refusing to leave the unit. *Id.* Medical cleared Plaintiff for a transfer around 4:45 p.m. *Id.* Attached to Cohen's affidavit is the Step 1 and Step 2 and the ALJ's dismissal. *Id.*

Defendants submitted Mary Montouth's affidavit in support of their Motion. (ECF No. 28-9, Aff. Montouth). Montouth, as a grievance coordinator, attests to her various duties of conducting investigations, reviewing records and reports, and making recommendations to the warden. *Id.* Montouth's affidavit outlines the grievance procedure and process and attests that Plaintiff took full advantage of entire grievance process as to the excessive force claim. *Id.*

### B. Standard of Review

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases. *See Cruz v. Beto*, 405 U.S. 319, 321-22(1972); *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of

material fact where none exists. *See Weller v. Dep't of Social Servs.*, 901 F.2d 387, 391 (4th Cir.1990). If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c).

The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed.R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. *Celotex*, 477 U.S. at 323. Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial. Fed.R.Civ.P. 56(e); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. *Shealy v. Winston*, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 875 (4th Cir.1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at the trial on the merits." *Anderson*, 477 U.S. at 252.

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings. *See Celotex*, 477 U.S. at 324. Rather, the party must present evidence supporting his or her position by "citing to particular parts of materials in the record,

11

including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed.R.Civ.P. 56(c)(1)(A); *see also Cray Commc'n, Inc. v. Novatel Comput. Sys., Inc.*, 33 F.3d 390, 393-94 (4th Cir.1994); *Orsi v. Kickwood*, 999 F.2d 86, 91-92 (4th Cir.1993); D.S.C. Local Rules 7.04, 7.05.

### C. Discussion

Plaintiff brings this action pursuant to 42 U.S.C. § 1983.  Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred."  *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (internal quotation and citation omitted). A legal action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief."  *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

Under § 1983, a plaintiff must establish two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation "was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).

### 1. Failure to Exhaust Administrative Remedies: Medical Claim

Defendants argue that Plaintiff failed to exhaust his administrative remedies as to his claims of deliberate indifference to medical care.  In support, Defendants submitted the affidavit of Mary Montouth, who attests that she is employed as an Inmate Grievance Coordinator.  (ECF No. 28-9 at 1).  Montouth asserts that she reviewed the grievances filed by Plaintiff and there was no grievances filed on the issue of medical care.  (ECF No. 28-9 at 6).  Attached to her Affidavit were Plaintiff's Step 1, Step 2, and ALJ grievances and decisions.  (ECF No. 28-9 at 9-13).

The Prison Litigation Reform Act requires that a prisoner exhaust the available administrative remedies before filing a § 1983 action. 42 U.S.C. § 1997e(a). In enacting the PLRA, Congress carved out an exception to the general rule that exhaustion of state remedies is not a prerequisite to filing a civil rights suit. Accordingly, before Plaintiff may proceed with his claim as to medical care in this court, he must first exhaust his administrative remedies. The Supreme Court has held that "Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures." *Booth v. Churner*, 532 U.S. 731, 741 (2001); *see Porter v. Nussle*, 534 U.S. 516, 525 (2002). A failure to exhaust all levels of administrative review is not proper exhaustion and will bar actions filed by inmates, under any federal law, including 1983. *Woodford v. Ngo*, 548 U.S. 81, 84-85, 89-92 (2006). One of the purposes of the exhaustion requirement is to allow a prison to address complaints before being subjected to suit.

There is no evidence that Plaintiff filed any grievances regarding his claim of deliberate indifference to medical care. Plaintiff filed no response to Defendants' Motion for Summary Judgment. Montouth's uncontradicted Affidavit and supporting attachments demonstrate that Plaintiff did not exhaust his administrative remedies as to his claim regarding medical care. Thus, based on the evidence presented, it is recommended that the Defendant's Motion for Summary Judgment be granted as to this claim, for failure to exhaust administrative remedies. As it is recommended that the Complaint be dismissed for failure to exhaust administrative remedies, the merits of this claim will not be addressed.

**2.  Excessive Force Claim**

Plaintiff alleges that Defendants violated his right to be free from cruel and unusual punishment by using excessive force. The Eighth Amendment "protects inmates from inhumane

treatment and conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir.1996). The predominate focus in a claim for excessive force is not on the extent of the injury but rather the nature of and justification for the inflicted force. *See Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010). The Eighth Amendment analysis requires "inquiry as to whether the prison official acted with a sufficiently culpable state of mind (subjective component) and whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Williams*, 77 F.3d at 761.

In an excessive force claim, a claimant must meet a heavy burden to satisfy the subjective component. *See Whitley v. Albers*, 475 U.S. 312, 321 (1986). The claimant must show that a correctional officer applied force "maliciously and sadistically for the very purpose of causing harm" rather than in a good faith effort to maintain or restore discipline. *Id.* at 320-21 (internal quotation marks omitted). The objective component is not as demanding because "[w]hen prison officials maliciously and sadistically use force to cause harm,.... contemporary standards of decency always are violated whether or not significant injury is evident." *Wilkins*, 559 U.S. at 37 (internal quotation marks omitted). In *Whitley*, the Supreme Court identified factors to consider when determining whether a prison official's actions were carried out "maliciously and sadistically" to cause harm: (1) the need for application of force; (2) "the relationship between the need and the amount of force" used; (3) "the extent of injury inflicted";[1] (4) "the extent of the threat to the safety of staff and

---

[1] While the Supreme Court has "rejected the notion that 'significant injury' is a threshold requirement for stating an excessive force claim," this does not mean the extent or absence of serious injury is irrelevant. *Wilkins*, 559 U.S. at 37. Instead, the extent of injury suffered is just one factor to account for in the analysis, "but does not end it." *See Hudson v. McMillian*, 503 U.S. 1, 7 (1992)(holding "[t]he absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it."). The extent of injury may also provide some indication of the amount of force applied. *Wilkins*, 559 U.S. at 37. A de minimis use of physical

14

inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them," and (5) "any efforts made to temper the severity of a forceful response." *Id.* at 321.

Plaintiff alleges that four officers slammed him on his face and threw him repeatedly and that another officer pushed his knee into Plaintiff's face and head. The only evidence to support such an attack are the Plaintiff's own, self-serving claims in his Complaint. These claims, standing alone and without corroborating evidence, do not create a genuine issue of fact sufficient to survive summary judgment. *See Nat'l Enters., Inc. v. Barnes*, 201 F.3d 331, 335 (4th Cir. 2000). The only evidence presented shows Plaintiff's bruising under his toes was a result of Plaintiff's refusal to walk, dragging his feet and purposely falling to the ground, supported by video as attested by Garvin, and two minor scrapes were superficial irritations with no bleeding, no swelling, and no discoloration. (ECF No. 32 and 28-8). Furthermore, on the day of the incident, Plaintiff did not complain of the use of physical force in regard to the nature of his allegations; he only complained of the use of the pepper spray. (ECF No. 32, 28-8, and 28-11). There is no medical evidence presented to demonstrate that any injury was more than de minimus.

As to the chemical munitions used on Plaintiff, Plaintiff does not admit to any non-compliance with the escort. Plaintiff only alleges that he was picked up and continuously forced to walk. Plaintiff does admit to the violent assault by Plaintiff on Officer Cifelli. Plaintiff was yelling, pulling away, refusing to walk, slumping to the ground, and generally being non-compliant with the escort. (ECF No. 28-2, Aff. Cap. Powell); (ECF No. 28-4, Aff. Sgt. McKinstry); (ECF No. 28-7,

---

force does not violate the Eighth Amendment, "provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id.* Thus, an "inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Id.* at 38.

Aff. Sgt. Ford). Plaintiff was given multiple orders to cooperate with the escort, in an effort to temper the use of force, and warned to comply or chemical munitions would be used. (ECF No. 28-2, Aff. Cap. Powell); (ECF No. 28-4, Aff. Sgt. McKinstry). Plaintiff continued to fail to comply with orders and refused to stand or walk before one burst of chemical munitions was used. (ECF No. 28-2, Aff. Cap. Powell); (ECF No. 28-4, Aff. Sgt. McKinstry). An inmate's repeated refusal to comply with an officer's orders gives rise to the need for the use of some force. *See Williams*, 77 F.3d at 763; *Iko v. Shreve*, 535 F.3d 225, 239 (4th Cir. 2008); *see also Bell v. Wolfish*, 441 U.S. 520, 547 (1979)("Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.")

The "limited application of mace may be much more humane and effective than a flesh to flesh confrontation with an inmate." *Williams*, 77 F.3d at 763 (internal citations and quotations omitted). Consequently, an officer's use of chemical munitions on an inmate to prevent disorder generally does not infringe the Eight Amendment's prohibition against cruel and unusual punishment so long as the quantity of chemical munitions is commensurate with the gravity of the occasion. *Bailey v. Turner*, 736 F.2d 963, 968-69 (4th Cir. 1984). Whether the use of chemical munitions on an inmate constitutes excessive force depends on the "totality of the circumstances, the provocation, the amount of gas used, and the purposes for which the gas was used." *Id.* at 969. The gravity of the occasion was that Plaintiff was a "verified member[] of a security threat group, had a history of violence, and had just attacked a corrections officer with a weapon with life threatening force inflicting significant resulting injury." (ECF No. 28-2, Aff. Cap. Powell). The amount of chemical used was one pre-measured burst and one burst was sufficient to gain compliance. (ECF No. 28-2,

Aff. Cap. Powell). As to injuries from the spray, one eye was slightly pink but Plaintiff denied any vision problems on the day of the incident. (ECF No. 28-8). Plaintiff did not complain of eye problems until ten days after the incident. (ECF No. 28-11). However, Plaintiff had a four year history of eye complaints and upon examination appeared to be seeing well. (ECF No. 28-11). Plaintiff had two sets of glasses per prescription and had refused a third appointment regarding his eyes. (ECF No. 28-11).

For the above reasons, Plaintiff fails to create genuine issues of material fact to withstand summary judgment on his claims for excessive force. As stated above, he may not rest on the self-serving allegations in his Complaint alone. Fed. R. Civ. P. 56(c)(1)(A); *see Celotex*, 477 U.S. at 324. Based on the evidence submitted by Defendants, including but not limited to, medical records, references to video recording, affidavits, and incident reports, no reasonable juror could find that Defendants applied force maliciously and sadistically for the very purpose of causing harm rather than in a good faith effort to maintain and restore discipline and inflicted injury upon Plaintiff. Accordingly, it is recommended that Defendants' Motion for Summary Judgment be granted.

## RECOMMENDATION

For the reasons discussed above, it is recommended that Defendants' Motion for Summary Judgment be granted.

s/ Thomas E. Rogers, III  
Thomas E. Rogers, III  
United States Magistrate Judge

September 30, 2016  
Florence, South Carolina

**Plaintiff's attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> Post Office Box 2317
> Florence, South Carolina 29503

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).